IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION


ALFRED D. WRIGHT                                            PETITIONER
Reg # 15710-171


v.                        Case No. 2:11CV00102 SWW-JTK


T.C. OUTLAW, *Warden,*
FCI- Forrest City                                          RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court
Judge Susan W. Wright.   Any party may serve and file written objections to this
recommendation.  Objections should be specific and should include the factual or legal basis for
the objection.  If the objection is to a factual finding, specifically identify that finding and the
evidence that supports your objection.  An original and one copy of your objections must be
received in the office of the United States District Court Clerk no later than fourteen (14) days
from the date of the findings and recommendations.  The copy will be furnished to the opposing
party.  Failure to file timely objections may result in waiver of the right to appeal questions of
fact.

If you are objecting to the recommendation and also desire to submit new, different, or
additional evidence, and to have a hearing for this purpose before the District Judge, you must,
at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a  hearing is granted)  was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court

Eastern District of Arkansas

600 West Capitol Avenue, Suite A149

Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is Petitioner's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241.  (Docket Entry #1) Petitioner has admittedly exhausted his administrative remedies, and the case is ready for disposition.  For the reasons that follow, the Court recommends that the petition be denied with prejudice.

### I.  Background

Petitioner pleaded guilty in the United States District Court—District of South Carolina (Columbia) to possession of a firearm during drug trafficking and possession with the intent to

distribute 5 grams or more of cocaine.  (DE #8-1, at 1-5) The Court sentenced Petitioner to 130 months' imprisonment on April 15, 2008, *see id.*, and reduced the sentence on December 4, 2008, to 117 months.  (DE #8-1, at 6-7)   Prior to his disciplinary transfer to FCI Forrest City, Petitioner was housed at the prison camp in Bennettsville, South Carolina.

On July 11, 2010, during visitation in Bennettsville, prison staff observed Petitioner on the patio standing behind a visitor— his wife Kiona Wright—and "moving his hips in a back and forth motion."  (DE #8-1, at 17) Mrs. Wright's dress was pulled up from the back and she was "bent slightly over."  *Id.*  Petitioner was advised to leave with the officer, who observed Petitioner's "erect penis out of his pants."  *Id.*  Petitioner admitted that his zipper was "half way down" and that he engaged in improper touching (pulling Mrs. Wright's dress up and placing his hand on her butt under her dress), but he denied any sexual activity.  (DE #8-1, at 19-23) On that day, Petitioner was charged with violation of prison code 205 (engaging in a sexual act) and 327 (unauthorized contact with public).

On July 13, 2010, the Unit Disciplinary Committee (UDC) recommended Petitioner be convicted of both violations and subject to a disciplinary transfer, disciplinary segregation, and loss of visitation, phone and commissary.  (DE #8-1, at 17) A disciplinary hearing was held on July 14, 2010, and Petitioner was advised of his rights before the disciplinary hearing officer (DHO).  *Id.* at 19.  The DHO found Petitioner guilty of a code 205 violation and sanctioned him to loss of visiting and commissary privileges for 365 days, disallowance of 27 days of good conduct time, 20 days loss of vested good conduct time, 30 days disciplinary segregation, and a disciplinary transfer.  (DE #8-1, at 18)

3

II.  Discussion

In this petition, Petitioner raises the following grounds: excessive punishment; denial of procedural due process; racial discrimination; and retaliation.  The Court will address each argument in turn.

The decision of a prison disciplinary officer is entitled to considerable deference by a reviewing court.  In reviewing prison disciplinary actions, the test is "whether there exists any evidence at all, that is whether there is any basis in fact to support the action taken by the prison officials." *Jackson v. McLemore*, 523 F.2d 838, 839-40 (8th Cir. 1975)(quoting *Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974)). Due process applies to prison disciplinary proceedings through the Fifth Amendment, which protects against arbitrary actions of the government affecting an individual's life, liberty or property interest.  Because they are not criminal trials, however, prison disciplinary proceedings need not provide all the procedural and substantive protections afforded a defendant in a criminal proceeding.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).

In *Wolff*, the Court set forth five elements that are required to satisfy procedural due process in the context of a prison disciplinary hearing:  (1) advanced written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied upon and the reasons for disciplinary action taken; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in a defense; (4) the ability to seek the aid of a fellow inmate or assistance from the prison staff where an inmate is illiterate or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary

4

for an adequate comprehension of the case"; and (5) an impartial disciplinary hearing body.  418 U.S. at 564-71.

Petitioner asserts first that his accuser's statement is "utterly false and unsustainable." Petitioner states BOP staff informed him there was a video of the incident, but he was not provided any video.  He also claims that his request for a DNA swab of his penis was denied. Thus, Petitioner claims he was denied his constitutional right to secure evidence on his own behalf and to use video footage to demonstrate what actually happened.  Neither of these claims rise to the level of a constitutional violation of Petitioner's due process rights.

While prison officials retain discretion to refuse to call witnesses "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases," *Wolff*, 418 at 566, this discretion "is not unbounded." *Cardaropoli v. Norton*, 523 F.2d 990, 998 (2d Cir. 1975).  Courts have recognized that the right to call witnesses is basic to a fair hearing and that there must be a legitimate reason for denying a prisoner this opportunity.  *See Wolff*, 418 U.S. at 566.  Thus, prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence.  *Ponte v. Real*, 471 U.S. 491 (1985).  Moreover, the officials must explain their reasons for refusing to grant such a request.  Finally, the burden of proving adequate justification rests with the prison officials.  *Id.*

There was no mention in any of the information reviewed by the Court of a video being available.  Nor is there any mention by Petitioner in any grievance that he was unable to present such evidence.  Even if there was a video of the incident, Petitioner admitted to touching his wife under her dress, which was considered by the BOP to be "engaging in a sexual act."  (DE

5

#8-1, at 20) The DHO informed Petitioner that "[t]he act of placing your hands underneath your visitor's dress is inappropriate and also viewed as an attempt to produce mutual sexual gratification." *Id.*   It was also explained to Petitioner that policy did not provide for swab tests and that, since a staff member observed the incident, no swab test was necessary.  (DE #1, at 36)   *See Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) ("[D]isciplinary actions may be taken—and often they are—based only on a guard's report.  Even when there is substantial evidence to the contrary, the committee may find the guard's report to be credible and therefore take disciplinary action.") (citing *Superintendent v. Hill*, 472 U.S. 445, 456 (1985)).

The BOP provided adequate justification for the denial of a DNA swab and Petitioner's own admission that he touched is wife under her dress clearly satisfies the "some evidence" standard enumerated in *Wolff*.  Petitioner provides no evidence to support his claim that the officer's report was "false and unsustainable." *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (filing a false disciplinary report against inmate is not itself actionable).

Furthermore, there is no evidence of a procedural due process violation.  Petitioner claims he informed the hearing officer that he had non-inmate witnesses (his wife and mother), to which she replied words to the effect of "well, you have no witnesses then." (DE #1, at 3) He states he could have elicited the affidavits of these two witnesses to show that he was not guilty as charged. However, these arguments lack merit.  First, Petitioner signed the notice of disciplinary hearing and indicated that he did not wish to bring any witnesses.  (DE #8-1, at 24) Second, Petitioner admitted that he engaged in improper conduct by touching his wife under her dress and having his pants zipper down.  Third, the reporting officer observed the conduct.

Finally, Petitioner claims racial discrimination and retaliation.  Petitioner states that the reporting officer made comments about his biracial marriage and paid undue attention to his wife during visits.  Petitioner also claims that, on or about September 13, 2010, the reporting officer dumped food on him.  Further, Petitioner states that, when he was transferred, his property (food and other goods in excess of $300) was taken from him and that he was shorted on his work time sheets by $15-$20.  The record does not evidence that Petitioner has exhausted his administrative remedies as to these claims.  Allegations regarding the loss of property during his prison transfer and lost wages must first be brought to the Bureau of Prisons under 28 C.F.R. § 543.31(a).  *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 242 (2008) ("the 'owner of the damaged or lost property' first must file an FTCA claim with the Bureau of Prisons (BOP) regional office; the BOP, in turn, is authorized by statute to settle administrative claims for not more than $1,000, *see* 31 U.S.C. § 3723(a), which likely encompasses most claims brought by federal prisoners.  Only if the prisoner is 'dissatisfied with the final agency action' may he or she file suit in an 'appropriate U.S. District Court.'  28 C.F.R. § 543.32(g)."); *see also Hrbek v. Farrier*, 787 F.2d 414, 416 (8th Cir. 1986) (there is no constitutional right to prison wages).  Further, while his retaliation claim is unclear, to the extent Petitioner alleges the reporting officer subjected him to retaliatory discipline, the argument lacks merit because there is clearly some evidence that he violated a prison rule; he admitted as such.  *See Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir. 2002) (where there is "some evidence" of a violation of a prison rule, retaliatory discipline claims fail).  Finally, Petitioner has failed to prove he was subjected to racial discrimination.  In any event, such claims are not cognizable in habeas.  *See Otey v. Hopkins*, 5

F.3d 1125, 1130 (8th Cir. 1993) (A writ of habeas corpus is meant to provide a remedy for prisoners who are challenging the "fact or duration of their physical confinement and are seeking immediate release or a speedier release.").

### III.  Conclusion

Based on the foregoing, the application for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (DE #1) is dismissed, and the relief requested denied.

IT IS SO ORDERED this 30th day of May, 2012.

_____
UNITED STATES MAGISTRATE JUDGE